JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff, Joyce L. Finkovich, appeals the trial court granting summary judgment to defendant, State Auto Ins. Co. For the reasons that follow, we reverse the judgment of the trial court.
 {¶ 2} On April 28, 1988, plaintiff was injured in an automobile accident. Plaintiff's car was rear-ended by underinsured tortfeasor Sheila Smith. Plaintiff settled with Smith. Because that settlement was insufficient to compensate plaintiff for her injuries, plaintiff sought uninsured/underinsured ("UM") motorist coverage from State Auto.
 {¶ 3} When the accident occurred, plaintiff worked at REF Graphic Gallery, owned by her husband, Robert. Even though State Auto admits it began insuring the gallery on April 17, 1983, it denies that it was still the gallery's insurer on the date of plaintiff's accident. After State Auto denied her coverage, plaintiff filed suit asking the trial court for a declaratory judgment regarding her rights as an insured under the gallery's policy.
 {¶ 4} Plaintiff argues the gallery was insured by a policy issued to Robert E. Finkovich dba REF Graphic Gallery when the accident occurred. That policy, plaintiff says included UM coverage in the amount of $500,000. The parties do not dispute that plaintiff, as Robert's spouse is an insured under the policy as a "family member" and that she was within the scope of her employment with the gallery when the accident occurred. The parties also agree plaintiff did not notify defendant about the accident until June, 2001, more than thirteen years after the accident occurred. Both parties filed motions for summary judgment. The trial court granted defendant's motion on the basis that plaintiff failed to produce "a valid existing policy for the date of the accident * * *." Plaintiff timely appeals and presents one assignment of error for review:
The Trial Court erred in granting defendant state auto insurance Company's Motion for summary judgment because the policy before it was the policy in effect on the date of plaintiff's accident, and because, plaintiff, as the wife of robert finkovich, the named insured, is also a direct insured and is, therefore, entitled to underinsured motorist coverage in the state auto policy.
 {¶ 5} Plaintiff argues the trial court erred in deciding there was no insurance policy covering her when the accident occurred. Our review of the trial court's decision to grant summary judgment is de novo. Taylor v. Kemper Ins. Co., Cuyahoga App. No. 81360, 2003-Ohio-177, citing Zivich v. MentorSoccer Club (1998), 82 Ohio St.3d 367, 369-70, 696 N.E.2d 201.
 {¶ 6} Civ.R. 56(C) provides that "summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made."Taylor, supra at ¶ 11; Holliman v. Allstate Ins. Co.,86 Ohio St.3d 414, 1999-Ohio-116, 715 N.E.2d 532; Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 65-66, 375 N.E.2d 46.
 {¶ 7} In the case at bar, plaintiff says there was an existing and valid policy at the time of her accident and that policy bears the policy number PBP 7 824 531. That policy, attached to plaintiff's motion for summary judgment as Exhibit B, shows a coverage inception date of "4-17-87." It also shows a coverage lapse date of "4-17-88."
 {¶ 8} In its own motion for summary judgment, defendant argued that plaintiff's Exhibit B expired on April 17, 1988, eleven days before plaintiff's motor vehicle accident. Defendant further claims since plaintiff has not produced a physical copy of another policy in effect on April 28, 1988, she is not entitled to UM coverage. Defendant also argued that even if plaintiff can establish the existence of a valid policy on April 28, 1988, she nonetheless breached the terms of that policy by failing to provide defendant with timely notice and thus destroying its subrogation rights.
 {¶ 9} In her motion for summary judgment and her memorandum in opposition to defendant's motion for summary judgment, plaintiff argued that R.C. 3937.31(A) does not require her to produce any document other than policy number PBP 7 824 531, Exhibit B, appended to her motion, because the statute extends the one-year coverage period to two years as a matter of law. Plaintiff states, in relevant part, as follows:
In Exhibit B, the policy period stated was from April 17, 1987 to April 17, 1988. The accident in the instant case occurred on April 28, 1988, however, it is plaintiff's position that Exhibit B represents the actual policy in effect for this time period based upon the following. First, the court will note that this policy, number PBP 7 824 531 is a renewal, i.e., that it represents a new policy. In the upper left hand corner, the declarations page indicates that policy number PBP 7 824 531 is a renewal of former policy number 7 818 803. Therefore, when policy number PBP 7 824 531 was issued, it must have been issued for a guarantee period of not less than two years, which covers the time period of plaintiff's accident.
 {¶ 10} Plaintiff's memorandum in opposition to defendant's motion for summary judgment, at 2-3.
 {¶ 11} R.C. 3937.31(A) provides as follows:
Every automobile insurance policy shall be issued for a policy period of not less than two years or guaranteed renewable for successive policy periods totaling not less than two years. Where renewal is mandatory, "cancellation," as used in sections 3937.30
to 3937.39 of the Revised Code, includes refusal to renew a policy with at least the coverages, included insureds, and policy limits provided at the end of the next preceding policy period. No insurer may cancel any such policy except pursuant to the terms of the policy, and in accordance with sections 3937.30 to3937.39 of the Revised Code.
* * *.
 {¶ 12} In DeBose v. Travelers Ins. Cos. (1983),6 Ohio St.3d 65, 67, 451 N.E.2d 753, defendant insurer argued plaintiff's insurance policy had expired several days before his car was stolen. Defendant showed that plaintiff had failed to make his premium payment, which automatically terminated his coverage under the express terms of defendant's policy. The Ohio Supreme Court held that even though the insured failed to make his premium payment, he was nonetheless covered by defendant's insurance policy. The Court held that plaintiff was entitled to coverage because [a]t the time of the proposed termination, appellants' policy * * * was * * * within the two-year period set forth in R.C. 3937.31(A) during which renewal is mandatory.
(Emphasis added.)
 {¶ 13} Following DeBose, the Ohio Supreme Court decidedWolfe v. Wolfe (2000), 88 Ohio St.3d 246, 725 N.E.2d 261, in which the Court held as follows:
* * * The commencement of each policy period mandated by R.C.3937.31(A) brings into existence a new contract of automobile insurance, whether the policy is categorized as a new policy of insurance or a renewal of an existing policy. * * *
* * * The guarantee period mandated by R.C. 3937.31(A) is not limited solely to the first two years following the initial institution of coverage. Rather, the statute applies to every new automobile insurance policy issued, regardless of the number of times the parties previously have contracted for motor vehicle insurance coverage.
 {¶ 14} Id., at 250.
 {¶ 15} In the case at bar, plaintiff produced evidence showing that the gallery continuously carried insurance with defendant since April 17, 1983 through to April 17, 2000. According to plaintiff, because R.C. 3937.31(A) mandates a two-year period of insurance, every one-year policy issued by State Auto actually had to be for two years.
 {¶ 16} Plaintiff pointed to the April, 1988 loss notice attached to State Auto's motion for summary judgment. One of State Auto's senior claims examiners verified the notice as authentic. In that notice, there is a handwritten notation indicating that plaintiff's coverage originally began in April, 1983. The loss notice further says plaintiff's current policy "went into effect on 4/17/00." Plaintiff also produced the renewal policy at issue in this case, which shows coverage for "4-17-87 until "4-17-1988." Plaintiff says this document establishes that she had continuing coverage from April 17, 1985 to April 17, 1987.
 {¶ 17} Plaintiff points out, moreover, that April 17th is a consistent date on each of the policies she has shown State Auto issued. She submits that this is sufficient evidence of continuous coverage with State Auto from April 17, 1983 to April 17, 2000.
 {¶ 18} Under DeBose and Wolfe, however, the only relevant policy is Exhibit B, the policy dated April 17, 1987 to April 17, 1988. We conclude that that policy was a brand new policy of insurance and as such, it had to provide two-years of coverage pursuant to R.C. 3937.31(A). Accordingly, instead of an expiration date of April 17, 1988 as stated in the policy, coverage continued until April 17, 1989. We therefore agree with plaintiff that when the accident occurred the April 17, 1987 policy provided her with UM coverage as a matter of law. Accordingly, the trial court erred in granting defendant summary judgment. This matter is therefore remanded to the trial court for further proceedings consistent with this opinion.
 {¶ 19} We also note that defendant's motion for summary judgment included arguments about plaintiff's untimely notice and the destruction of its subrogation rights. Since the trial court never addressed the notice/subrogation issues, however, we do not reach these issues. We do, however, note that the Ohio Supreme Court's recent decision in Ferrando v. Auto-Owners Mut. Ins.Co., 98 Ohio St.3d 186, 2002-Ohio-7217, 781 N.E.2d 927, will control the disposition of the notice/subrogation issues upon remand to the trial court.
 {¶ 20} Judgment accordingly.
 {¶ 21} This cause is reversed.
Gallagher and Calabrese, Jr., JJ., concur.
It is, therefore, ordered that appellant recover of appellee her costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.